# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 2:21-cr-053 |
| v. | : Chief Judge Algenon L. Marbley |
| RONALD LEE JACOBS, | : |
| Defendant. | : |

## OPINION & ORDER

This matter is before the Court on Defendant's Motion *in Limine* to Exclude Late Disclosure Evidence (ECF No. 102). In his Motion, Defendant requests that this Court exclude evidence of two jail calls disclosed to the defense the day after the May 17, 2022 pretrial hearing in this matter. For the reasons set forth below, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Defendant is charged in the superseding indictment with six counts of interference with commerce by robbery in violation of 18 U.S.C. § 1951, and six counts of brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). (ECF No. 25).

At the time that Defendant filed the instant Motion, Defendant's trial date was set for May 23, 2022. (ECF No. 49). On May 17, 2022, this Court held the final pretrial conference in this matter. (ECF No. 101). On May 19, 2022, this Court held a suppression hearing. (ECF No. 103). At the hearing, the parties discussed, among other topics, two recorded jail calls which the Government produced to the defense earlier that same day.

1

The first call, recorded on December 11, 2020, is between Defendant and his ex-girlfriend, Tisha Miller. In relevant part, the Government's summary of the call—referring to Defendant as "RJ" and Miller as "TM"—is as follows:

> RJ explains that ATF got him from the jail and the US Marshals brought him back after his court appearance. TM was shocked and told him, "Nigga, after this, you better sit your ass down!" At 5:15 into the call, TM asks, "So, does it seem like you're definitely gonna have to go away?" After a moment, he replies, "Yeah, it do." . . . . She then asks, "Why do you say that?" His answer is, "Well I can't say exactly on the phone, because . . . . " And she says, "Ok-" After a pause, he says, "But God willing, it ain't that long."

(ECF No. 102-1 at 1).

The second call, recorded on October 2, 2021, is also between Defendant and Miller. In relevant part, the Government summarized the call as follows:

> RJ begins by telling TM that he had court the morning before to be arraigned on new charges . . . . TM tells RJ, "I mean, at the end of the day, you know what you've done," He responds, "Yeah, I know what I've done . . . . " RJ then denies doing the other stuff he's being accused of by saying, "Yeah I done did some shit. But not what they charging me for." Later in the conversation, TM tells him, "You're lying, You know you're lying." . . . . A moment later, she tells him, "And you knew what the consequences was and you played with it anyways." . . . . RJ protests and she repeats several times that he is a pathological liar. When pressed on by RJ how she believes that, she tells him, "I'm not gonna tell your business on the phone, but you know I was there. So, you playing victim that's part of your mental illness." They go back and forth about whether or not RJ is lying and has a mental illness. She ends the call telling him, "You're a liar and mentally unstable . . . . Bro, you can't even stay . . . keep from robbing people." He then hangs up on her.

(*Id*. at 2).

As characterized by defense counsel at the suppression hearing, "[i]n one [call] he's saying to his girlfriend he may be getting a lot of time, and the other call his girlfriend is basically calling him a liar, making statements that he must have done the robberies. He denies doing them, says I've done stuff in the past." (ECF No. 110 at 94:8–94:18).

2

Defendant requested this Court's exclusion of the calls "because of the late disclosure and [because] it essentially is propensity evidence." (ECF No. 110 at 94:19–94:23). On the issue of timeliness, Government responded that the calls were provided so late because the agent on the case "recently" started listening to more calls to develop additional evidence. (*Id*. at 94:18–94:24). On the issue of admissibility, the Government argued that the calls are relevant because they include Defendant's own statements and accusations from his girlfriend that he is being dishonest about things relevant to this case. (*Id*. at 95:2–95:5). The Government also argued, "[a]s far as propensity . . . [t]he fact that he says he's going to go away implies that he knows he did it[.]" (*Id*. at 95:6–95:8).

On May 25, 2022, the Government provided notice of its appeal of this Court's Order suppressing a confession obtained from Defendant on November 2, 2020 (the "Suppression Order"). (ECF No. 107). On March 28, 2023, the United States Court of Appeals for the Sixth Circuit reversed the Suppression Order. (ECF No. 123). Following the Sixth Circuit's issuance of its mandate on April 19, 2023 (ECF No. 124), Defendant's instant motion is ripe for this Court's review.

## II. STANDARD OF REVIEW

The purpose of a motion *in limine* is "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). "Whether or not to grant a motion in limine falls within the sound discretion of the trial court." *Delay v. Rosenthal Collins Grp., LLC*, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012) (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012)). The guiding principle is "to ensure evenhanded and expeditious management of trials." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

"A court should exclude evidence on a motion in *limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *Delay*, 2012 WL 5878873, at *2 (citing *Ind. Ins. Co.*, 326 F. Supp. 2d at 846). The burden rests on the movant. *Morrison v. Stephenson*, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. Furthermore, "[o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility as they arise." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison*, 2008 WL 343176, at *1 ("Courts . . . are generally reluctant to grant broad exclusions of evidence *in limine*, because a court is almost always better situated during the actual trial to assess the value and utility of evidence." (internal quotation marks omitted)).

Nonetheless, "a trial judge has broad discretion on evidentiary rulings." *United States v. Hart*, 70 F.3d 854, 858 (6th Cir. 1995). The Sixth Circuit applies the abuse-of-discretion standard to its review of a district court's decision whether to admit or exclude evidence. *United States v. Ashraf*, 628 F.3d 813, 826 (6th Cir. 2011).

### III. LAW AND ANALYSIS

In his Motion, Defendant argues that the jail calls should be excluded on two bases. First, Defendant argues that the calls were improperly disclosed merely days before the original May 25, 2022 trial date, although the first call was recorded on December 11, 2020, and the second recorded on October 2, 2021. Second, Defendant argues that the calls involve "multiple levels of hearsay" and are barred by the Federal Rules of Evidence. Given that the May 25, 2022 trial date

was vacated pending the outcome of the Government's appeal, the timeliness issue is moot. As such, this Court considers only whether each call comports with the Federal Rules of Evidence.

### A. The First Call

With respect to the first call, Defendant argues for its exclusion under Federal Rules of Evidence 401 (relevance), 403 (prejudice) and 801 (hearsay). This call records Defendant's conversation with Miller in which Defendant shared his expectation that he will be incarcerated for his alleged crimes in this matter.

Defendant first argues that the statements contained in the first call are irrelevant and unfairly prejudicial. Defendant argues that the jurors cannot consider jail time in their deliberations and thus his statements about expecting to go to jail do not relate to the truth of any of the allegations in the superseding indictment. The Government responds that Defendant's statements in this call relate to his consciousness of guilt and the identification of him as the perpetrator. The Government also asserts, without further argument, that the evidence is not *unfairly* prejudicial.

The Court enjoys broad discretion in "determining whether the danger of undue prejudice outweighs the probative value of the evidence." *United States v. Carney*, 387 F.3d 436, 451 (6th Cir. 2004). Rule 401 defines "relevant evidence" as evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," assuming that "the fact is of consequence in determining the action." Fed. R. Evid. 401. Rule 403, however, provides that even relevant evidence may be excluded if its probative value is substantially outweighed by a danger of, *inter alia*, unfair prejudice. Fed. R. Evid. 403. The Sixth Circuit defines unfair prejudice as the "undue tendency to suggest a decision based on improper considerations[.]" *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999).

5

In *United States v. Ross*, the defendant moved to block the admission of his statements "to the effect of hoping federal prison was better than state prison and that he hoped they sold protein supplements in federal prison like they did in state prison." 588 F. Supp. 2d 777, 784 (E.D. Mich. 2008). The *Ross* Court agreed with the government that the statement tended to show the defendant's guilty knowledge and was thus relevant. *Id.* at 785. Although the *Ross* Court barred the defendant's references to his past incarceration, it found that the portion of the statement in which he predicted his incarceration was not unduly prejudicial because it "d[id] not suggest past involvement with a prison system or past criminal activity." *Id*. at 785–86.

This case is similar. Defendant's statements, if interpreted by the jury to constitute an acknowledgment that he is likely to be imprisoned *because of his guilt*, would be undoubtedly of consequence in determining the action. *See* Fed. R. Evid. 401. Defendant's relevance challenge therefore is rejected. Defendant next argues that this evidence is *unfairly* prejudicial without explaining why this is so. Despite Defendant's assertions, this Court does not find unfair prejudice in the statements made in the call. Here, the call merely records Defendant's opinion that the instant proceedings will likely result in his incarceration. None of the statements in the call is necessarily indicative of guilt, nor do they run the risk that the jury might vote to convict him based on improper considerations.

Defendant next asserts, with limited argument, that this call should be barred as impermissible hearsay. The Government contends that the jail-call statements are admissible under Rule 801(d)(2) because they contain statements made by Defendant which will be offered against him at trial. Rule 801 defines "hearsay" as a statement made by the declarant outside of court and which is offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801. Under Rule 802(d)(2), a statement that is offered against an opposing party is not hearsay in

certain circumstances. Fed. R. Evid. 801(d)(2). The statement at issue in this call merely conveyed Defendant's prediction that he will be incarcerated at the conclusion of the instant proceeding. The Government offers this testimony for the proposition that Defendant was aware of his guilt—not to prove the truth of the matter about which he speaks. At any rate, the statements at issue in this call are Defendant's own statements being offered against him by the opposing party. Defendant's statements thus constitute admissions by a party-opponent permitted under Rule 801(d)(2)(A). Therefore, Defendant's hearsay challenge is rejected.

Defendant last argues that the admission of this call would violate Rule 404(b)'s ban on propensity evidence. At the suppression hearing, the Government explained that the significance of Defendant's statements in this call is "[t]he fact that he says he's going to go away implies that he knows he did it[.]" (*Id.* at 95:6–95:8). Under Federal Rule of Civil Procedure 404(b), the Government is prohibited from using "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." *See* Fed. R. Evid. 404(b). Propensity evidence typically entails "generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Although Defendant challenges the admission of this call given this Court's exclusion of other evidence related to his prior bad acts, none of his statements therein references prior bad acts. Defendant's propensity argument is therefore rejected.

Defendant's Motion is thus **DENIED** with respect to the first call.

### B. The Second Call

Defendant seeks the exclusion of the second call on the same bases as the first: Rules 401 (relevance), 403 (prejudice) and 801 (hearsay). This call records an exchange between Defendant

7

and Miller in which Defendant admitted to having committed prior bad acts, "but not what they charging me for." (ECF No. 102-1 at 2). In response, Miller repeatedly insisted that Defendant is mentally unstable, a pathological liar, and is being dishonest about his involvement in criminal activity. (*Id.*). As characterized by Defendant, "[i]n this call, Mr. Jacobs denies committing the crimes he's charged with but makes statements about having done things in the past. Ms. Miller spends a large portion of the call accusing him of lying and being mentally ill." (ECF No. 102 at 3).

Defendant argues that this call should be excluded because the call involved not just Defendant's statements, but character accusations and credibility determinations made by Miller. Defendant also challenges the relevance of the evidence given that the call records Defendant *denying* his guilt in the face of Miller's accusations. Last, Defendant contends, his references in the call to having "done things in the past" are related to prior bad acts and provide no context or temporal connection regarding the acts to which he referred. The Government responds that this call is relevant because Defendant's statements in this call relate to his consciousness of guilt and the identification of Defendant as the perpetrator of the alleged crimes. The Government also argues, like the first call, that this call does not constitute hearsay because it contains statements made by Defendant that will be offered against him at trial.

Rule 404(b)(1) prohibits admission of "[e]vidence of any other crime, wrong, or act" when that evidence is used "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Thus, the district court may only admit prior bad acts evidence if it is offered for a legitimate purpose, meaning that the "evidence is probative of a material issue other than character." *United States v. LaVictor*, 848 F.3d 428, 445 (6th Cir. 2017). As explained by the Sixth Circuit, "[t]he purpose of

8

Rule 404(b) is to prevent a jury from convicting a 'bad man' who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds and from inferring that because the accused committed other crimes, he probably committed the crime charged." *United States v. Sadler*, 24 F.4th 515, 554 (6th Cir. 2022) (cleaned up).

While it is unclear whether Miller's accusations that Defendant cannot "keep from robbing people" and that he "know[s] what [he's] done" relate to the criminal behavior for which Defendant has been charged in *this* case, the conversation is probative of Defendant's guilt. After all, Defendant seemed therein to acknowledge his history and pattern of criminal behavior. Miller's statements specifically referenced Defendant's supposed history of dishonesty and of "robbing people," implicating some of the same conduct that is at issue in this case. Miller's statements also conveyed the possibility that she was present at the scene of Defendant's alleged misdeeds. This Court is accordingly convinced that the second call is relevant.

What is equally clear, however, is that this call must be excluded because it is unfairly prejudicial. *See Alley v. Bell*, 307 F.3d 380, 396 (6th Cir. 2002) (explaining that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury). Unlike the first call, the second call *does* contain propensity evidence. Although it is unclear what acts the pair's conversation referenced, Defendant stated clearly that his acknowledged prior misdeeds are "not what they charging me for." (ECF No. 102-1 at 2). Thus, Miller's accusations and Defendant's acknowledgments likely referenced unrelated, prior bad acts. The significance of this call, according to the Government, is that it contains statements from Miller "that [Defendant]'s lying about things." (ECF No. 110 at 95:3-95:4). The critical importance of this call, therefore, is in Miller's statements accusing Defendant of mental instability, chronic dishonesty, and routine

9

criminality. The Government's usage of this call would undoubtedly go "to prove the character of [Defendant] in order to show action in conformity therewith." Fed. R. Evid. 404(b). This is impermissible.

The Government suggests that the evidence could be offered for "another purpose" as provided by Rule 404(b)(2). Courts employ a three-part test to determine admissibility under that provision, the first step of which is to "determine[] whether there is sufficient evidence that the crime, wrong, or other act took place." *United States v. Barnes*, 822 F.3d 914, 920 (6th Cir. 2016). The vagueness of the statements at issue in this call makes it impossible to determine the nature of the prior bad acts and whether there is sufficient evidence that they occurred. The call thus fails the very first step of the three-part test.

Given this Court's analysis, the second call will not come into evidence. Defendant's Motion is thus **GRANTED** with respect to the second call.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion *in Limine* to Exclude Late Disclosure Evidence (ECF No. 102) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

 **ALGENON L. MARBLEY**
 **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  May 22, 2023**